Mr. Sluze, please proceed. Thank you, Your Honor. May it please the Court. My name is Edward Sluze and it is my pleasure to be here on behalf of the appellant, City of Richmond Heights. I feel like I have a bit of a blend between the last few cases. It's an insurance question with a little bit of COVID-19 sprinkled in. This is an important case for the community and we do appreciate the Court granting oral arguments in this case. I am aware that if one were to read the briefs, you're being told this is either an incredibly unique singular case of first impression or one of many thousands before this Court. In the reply brief, I initially said, to say this is one of many thousands is completely wrong. I will actually amend that slightly. I think in many regards, both parties are actually right. I'm not going to stand here and waste the Court's time debating or arguing that the presence of COVID-19 particles on or at a property can constitute physical change or the physicality requirement. I think the Court's opinions are recent and clear on that issue. But in the case of Barr, that's always been a side issue. It's never been the primary issue. Instead, this is the only case that Council is aware of. Aside from there's a case pending in state court for the City of De Pere, which also had sales tax revenue loss policy, but there have been no opinions issued in that, that deals with a loss of sales tax revenues instead of business interruption or business income losses. Further, where this case is even more unique is the existence of the additional covered property endorsement or the ACP as it's being referred to. Counsel, I've got to interrupt you. What stage is the De Pere case at? They've been doing discovery. I took a look on CaseNet in Missouri. In St. Louis County Circuit Court? Correct. Correct. It's a state case. That case is a little different as well because here, the city was actually sued by the insurance company, De Pere, they're the plaintiffs, so it's kind of flipped the other way around a little bit, so it's behind. Who are the defendants in the De Pere case? You know? I think it's the Lawyers of London, but I'm not. Okay. And in that case, are there state defendants? Are there other ones? Are there state defendants? The state? No. No. Thank you. Proceed. The ACP itself, which is found several times, it's attached to a lot of the pleadings, and it's interesting, the district court referred to it being as extraordinarily brief, which personally I think is a great thing in an insurance policy to have a provision that's brief rather than circuitous, but it begins or cautions the reader by saying, this endorsement changes the policy. Please read carefully. And then in its entirety, it goes on to say, this policy is changed to include the following, even though the items listed may be excluded elsewhere in the policy, sales tax revenue. I think one of the problems that all the parties, the district court and now you, oh, yes, your honor. Isn't there still some requirement in the policy that there be a covered loss, an occasioned loss, an occurrence, right? And so even though the additional covered property endorsement says what it says, you still are going to have to relate back to, okay, what's the occurrence, right? Aren't you? Yes. Because it doesn't just guarantee that income all the time, right? Well, I mean, the policy itself has numerous exceptions listed, intentional lacks. So it's not like, great, we're down 27 cents in sales tax revenues, let's make a claim. There are lots of exclusions. But I think that's part of the problem with the policy. I guess I've been trying to think of a good analogy here, and the one I keep coming back to is if I go and get my car, I get an insurance policy for my car, and they give me a motorcycle policy, and they just change the references to motorcycle to car, that's going to do a lot of the things. There are a lot of commonalities. But at the end of the day, if I've only got two of my four wheels covered, that's going to cause me some problems. And that's what we're really faced with here. We're kind of operating under this legal fiction or factual fiction, I guess, that this was a curated or crafted policy designed to provide sales tax revenue losses. It wasn't. They've taken a business interruption policy, they've redefined business income as sales tax, and here you go. And in the briefing, we cite to a number of examples, but another one, it's on page 50 in the appendix. You'll see some of the obligations for the insured in the event of a loss. We have to provide access to the properties, the personal or the actual properties, so they can inspect. We have to make sure there isn't any more damage. We can't do that. It's not the city's property. The store in the St. Louis Galleria may have had a loss by fire. We can't open the doors up for them and let the insurance company come in. And that's where you see the echoes throughout the policy of the problems you get when you try and shoehorn one type of policy into another. And all this goes to say, this was a 12B6 motion to dismiss. The court found that it was clear and unambiguous. I guess I'd submit that if it takes 10 pages to say it's clear and unambiguous, it's probably not clear and unambiguous. But that is where we are, that it is ambiguous. What do these things mean? The district court and my opposing counsel indicate, well, that means the exclusions don't apply. Well, now the exclusions don't mean anything. And if you follow that argument through its natural progression, and to your point as well, doesn't there still need to be a covered loss? Well, if you look at the business income coverage provision, in this situation, there was clearly a loss of sales tax revenue. The court decided, well, there wasn't a physicality requirement. Well, isn't that an exclusion? Now, because of that physicality requirement, the sales tax revenues are excluded. Well, that endorsement, and I'd submit that the average person of average intelligence looking at that endorsement would say, well, our sales tax here is covered. And when you put those two things together by operation, I think that, at the very least, would create an ambiguity sufficient to survive a motion to dismiss. There's been no discovery done, there's been no ability to have insurance professionals or solicit testimony about what people believe this said. And I think the other thing on the exclusion argument is it doesn't refer to exclusions with a capital E, it just says otherwise excluded. I think if it referred to exclusions with a capital E, you still have the issue about, well, why put them in there? And it's in the counter-claim, but the policy has been changed in the subsequent years to add a communicable diseases exclusion, which would be doubly pointless if, one, the exclusions don't apply, and then, two, the physicality requirement can't be met for a communicable disease. So I think for those reasons, there certainly are issues with that interpretation. We're applying Missouri law. Correct, correct. There's been a flood of federal cases on this, as you know. Have the Missouri courts had a flood of cases? I've not seen... Reported at the Court of Appeals and Supreme Court level. I've not seen any come up, Your Honor. I've been trying to periodically track and sort by date, and I've not seen any... And none are cited in the briefs, right? Correct, correct. Proceed. I'm aware that this court, within the last month, issued another case on this. So, you know, I think the district court, in finding that this was not clear, or in finding it was clear and unambiguous, didn't apply the usual canons of usual contract or insurance contract interpretation. I think all the inferences were applied against the counterclaim plaintiff here. I believe that it was interpreted in a manner to defeat coverage, and I don't think it was looked at in light of what a reasonable person of ordinary average intelligence would interpret it to be. Just to touch on the other claims as well, the vexatious refusal claim, I think obviously that is tied in with the breach of contract count, and then obviously the judgment on the pleadings. The fraud and negligence claims and also the breach of fiduciary duty claims, they were inducement claims or a breach of duty in order to provide a policy that didn't do what it was. I have a question about Missouri law and all this, right? Yes, Your Honor. And part of it is just where I come from and what my background is. If you look at fraud, at common law, it could be a crime, it could be a tort, it could be a contract claim. And if you don't like North Dakota's field code state and the field code separated about, and we say fraud is a contract claim and deceit is a tort claim, and we have all kinds of case law that says you can't recast a contract claim, a fraudulent inducement claim, to then turn it into a negligence claim. And yet you have done that here. And my question is, is that actually allowable under Missouri law? Just, you know, can fraud and the inducement really be something other than a contract claim? I believe it can be, Your Honor. Obviously the district court disagreed. But in the case of Barr and it's the Ward-Hyundai, or Hyundai-Ward case, I believe, references that. But there's a difference between saying you acted fraudulently or negligently in the administration of the insurance contract we're saying that the insurance company, and bear in mind we haven't had an opportunity to discover yet, but the ACP alone is an inducing document or an inducing thing that was used to get the city to sign or procure at an appreciable cost an insurance policy that doesn't do the one thing it was designed to do. Your Honor, I would, I guess, ask to reserve the rest of my time. Yes, and we'll give you a minute. We'll round up to a minute. Thank you. So you know in advance. Thank you, Your Honor. Okay, thank you. Mr. Ackerman. May it please the Court. Winston Ackerman for Mount Holly Insurance Company. The type of policy issued here is not as unusual as my friend would like to make it. It is essentially what is generally referred to as contingent business income coverage or dependent property coverage. It is very similar to what this Court construed in a case called Pentair. I believe that's a 2005 decision. It's also very similar to a policy that was construed by the Seventh Circuit in the COVID context in a case called Stanton, USA. Was it with the city  It was not tax revenue, but it's essentially a type of policy. Was it with the city, a municipality, a local government? No. Because I didn't think there were any cases with cities and municipalities. Are there? As far as I know, there's no cases involving tax revenue. I'm not familiar with the one that my friend mentioned earlier. But those cases are similar. The ones I've described are similar in the sense that the policy covers the insured's income if the loss of income is caused by property damage to some other third party that the insured relies upon for its revenue, essentially. So it's a very similar construct where what is required is direct fiscal loss or damage to property at some third party location and that suspension of the third party's operations gives rise to a loss of usually business income here at sales tax revenue for the policy holder. So those policies are common. What this policy is designed to cover would be let's say there's a tornado at the St. Louis Galleria Mall. That's the first of the five locations that are covered by this or that can generate coverage under this policy. So if there's a tornado there, they have to rebuild the property, they lose tax revenue. That's what this policy covers. And this court has dealt with a direct fiscal loss issue eight times. In the COVID context, the law there is very clear. Missouri State Court system does have no cases that I'm aware of on that issue. Moving on to the endorsement that my friend focuses on very heavily. The endorsement provides that the policy essentially includes sales tax even if it may be excluded. I think the word may there is important. It's just saying if there's some provision that could be read as saying there's no coverage at all for sales tax revenue, that's not what we mean. It's what I might characterize as kind of a belt and suspenders provision that you often find in insurance policies just to make clear that there's no exclusion for sales tax revenue. But the city's not trying to negate any exclusion. That provision, I think, has no real applicability here at all because we're not relying on any exclusion and they're not asking this court or they didn't ask the district court to negate any exclusion. So that provision really deals with when exclusions might not apply but it's not an issue here. That provision is not a separate grant of coverage. I think the district court's opinion was quite thorough in going through. Well, whenever the policy is granting coverage, it says we, the insurance company, will pay for X, Y, Z. We will pay for your sales tax revenue in these specific circumstances if you have direct fiscal loss or damage to one of these five locations and that damage requires repair and so you're not getting tax revenue. The city's reading of the policy as a whole is completely unreasonable. I think if you're looking for a case that talks about how to interpret Missouri policy in this context, I would point to this court's decision in Brazil versus auto owners that's a 2021 decision that goes through that sort of analysis and concludes that the policyholder's reading was completely unreasonable and that's really the case here. The city would have it as I understand it that even if they lose sales tax revenue because it's a bad economy or a business made some decision or a health department decides that they're going to shut down a restaurant because it's not following health guidelines. In those circumstances the city would say there's coverage under this policy because they would read that endorsement as completely essentially getting rid of the other requirement of direct physical loss or damage to property. Well the heading above it does say covered property doesn't it? The heading says additional covered property endorsement. Does it change coverage then? It doesn't change coverage. It simply says I think you have to read it together with the language that appears below that. So the language is the policy is changed to include the following even though the items listed may be excluded. So if there's an exclusion that applies that would exclude sales tax revenue completely then this would apply. Basically I think the reason for this endorsement is because this type of coverage would also be attached to circumstances other policies where a city is insuring city hall. Now here the city is not insuring their buildings under this policy. For whatever reason they decided to buy this as a separate self-standing coverage. But it would be more typical that this would be added on to a policy where the city is also insuring its buildings. So if the city is also insuring its buildings then the building coverage would say we don't cover money. Building coverage wouldn't cover money in a bank account. So if this endorsement were attached to a more a policy where the coverage is for the buildings then it would be saying in that context that there's no we're not trying to exclude that type of exclusion wouldn't apply. Or if in this case if we were taking the position that there's a consequential loss exclusion in this policy. So if we were taking the position that the consequential loss exclusion means that there's no coverage at all for sales tax revenue then that endorsement would take that argument out of play. I mean it's really what I would consider a belt and suspenders provision. It's one in the Seventh Circuit decision in Crescent Plaza it's one of these many COVID decisions that talks about how belt and suspenders provisions are often in insurance policies and that's really nothing that nothing unusual about how insurance policies are constructed. But the way the city would have this policy read it would be essentially a warranty against a reduction in sales tax revenue for any reason at those five locations. And I'll just touch briefly on some of the other arguments the city has made as to the other counts. So the fraudulent and negligent misrepresentation counts are really extremely thin, very conclusory. The only substance to those at all is an allegation that the policy would cover sales tax revenues even if they're otherwise excluded. That's in paragraphs 50 and 60 of the counter claim. And that's again really irrelevant here because we're not relying on any exclusion. The city's not trying to negate an exclusion. And their allegation of falsity or their allegation of negligence is really based on the failure to pay the insurance claim. So going to Judge Erickson's question there if you look at paragraph 57 and 64 of the counter claim the injury that they're alleging is the denial of the claim. So there's really no difference, no substantive difference between what they're alleging as fraud and what they're alleging as breach of contract. It's also not pled with particularity. That's what the district court relied on in large part. They do not identify who made the statement. They don't allege how the statement was made.  allege the claim which I think supports our position also on that not being independent of the breach of contract claim. I would suggest the court look to the Jacob Reger decision, another decision of this court. They also allege a breach of fiduciary duty claim. I think it's well established in Missouri that there's no fiduciary duty between an insurance company and its insured in this context, in the first party context. That's the pool case, Missouri court of appeals case that I think both briefs refer to. There would be a fiduciary duty when an insurance company is defending its insured under a third party liability policy. If they're hiring counsel to defend an insured, that's where fiduciary duty has been used. But the policy was purchased through a broker. So they didn't buy the policy directly from Mount Holly. That's another reason why the breach of fiduciary duty claim fails. Is it clear who the broker was working for? Yes, I believe so. If you look at paragraphs 11 and 12 of the insurance claim, they have to go through a broker. And the injury is essentially based on the denial of the insurance claim.  court has further questions, I think that's all I have. Seeing none, thank you for your argument. Mr. Schloos, we're back to you. So just to touch on a couple of things briefly. The ACPE is an endorsement. It's not a belt and suspenders provision. Under Missouri law, an endorsement is designed to amend the form policy to suit the needs of the insured or the insurer. This is the crux of the provision. With respect to the general comments about this issue, this was the sole purpose for this policy. If you ask any community that has a regional mall and it goes down, it's a huge cost. Those costs don't go away if the lights go off. In that regard, it is important. If there is an economic downturn, they have the ability to add an exclusion against that. For the reasons stated, I would ask that the court reverse the decisions of the district court. Thank you for your time.